UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CLINTON SEWELL, M.D. and
CARICARE MEDICAL SERVICES, P.C.,

                                Plaintiffs,

        -against-

1199 NATIONAL BENEFIT FUND FOR HEALTH
and HUMAN SERVICES,

                                Defendant.
------------------------------------------------------------------------X

**Case No. 04-CV-04474**
**ECF Case**

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS IN LIEU OF AN ANSWER

### Preliminary Statement

Defendant 1199 National Benefit Fund For Health and Human Services (the "Fund"), submits this reply memorandum of law and accompanying Affirmation of Key A. Mendes, sworn to September 23, 2004 ("Mendes Aff. II"), in further support of its motion to dismiss the Plaintiffs' Complaint against the Fund pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiffs and Defendant are parties to a Physician Participation Agreement (the "Contract" or "Provider Agreement") wherein Plaintiffs agreed to provide medical services to participants in the Fund. Defendant paid Plaintiff for these services but later determined that it had overpaid Plaintiff and withheld subsequent payment to recoup the overpayment. By this action, Plaintiffs sued Defendant alleging a balance due for medical services pursuant to the Contract.

Nevertheless, Plaintiffs allege that their breach of contract claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 et seq. ("ERISA") because they claim to be "assignees" of the Fund's beneficiaries. Plaintiffs are not assignees within the

meaning of ERISA because when they entered into the Provider Agreement with the Fund, they agreed to receive payment from the Fund and not seek payment from Fund participants and hold them harmless.  Because the Fund participants' interests are not affected, ERISA is not implicated.

Consequently, Plaintiffs' claim is a breach of contract matter and not an ERISA claim, therefore, this Court lacks jurisdiction to hear this case, and Plaintiffs' Complaint must be dismissed.

Furthermore, if Plaintiffs were assignees of the Fund's beneficiaries, they were required to obtain authorization from the Fund beneficiaries in order to appeal the denial of benefits, and exhaust administrative appeals prior to filing suit.  Plaintiffs did not obtain authorization to appeal on behalf of the Fund participants and did not appeal the denial of benefits.

## Relevant Facts and Procedural History

On January 19, 1999, Plaintiffs and Defendant entered into the Contract, wherein Plaintiffs agreed to provide health care services to enrollees under the Fund's plan of benefits (see Contract, p. 1, attached as Exhibit A to Plaintiffs' Complaint).  Defendant agreed to compensate Plaintiffs for covered services rendered to Fund participants (see Contract, ¶ 5) under the terms of the Plan of benefits.

Plaintiffs have been participating providers with the Fund since 1999 (Mendes Aff., ¶ 7).  Plaintiffs submit claims for payment by indicating procedure codes set forth in the American Medical Association's Book of Current Procedural Terminology (CPT) 2004 (Mendes Aff. II, ¶ 3).  The Fund has compensated Plaintiffs for treating Fund beneficiaries in accordance with the Fund's schedule of allowances for the procedure codes identified by Plaintiffs (Mendes Aff. II, ¶ 3).

On or about November 2003, the Fund performed an analysis of treatment codes used in Plaintiffs' claims submitted to the Fund for payment (Mendes Aff. II, ¶ 4). The Fund detected a marked over-utilization of the codes that generated the highest payment rates ("Upcoding") (Id.). On November 19, 2003, the Fund alerted Plaintiffs that their pattern of Upcoding resulted in Plaintiffs' overbilling the Fund and the Fund's making excess payments to Plaintiffs (Id.). During a meeting in or about January 2004, Plaintiff Sewell and his counsel met with the Fund's staff and the Fund's General Counsel in order to discuss Plaintiffs' pattern of Upcoding (Id.). Plaintiff Sewell did not agree with the Fund's allegation of Upcoding and refused to reimburse the Fund for its excess payments to Plaintiffs (Mendes Aff. II, ¶ 4). In or about January 2004, the Fund began to recoup its overpayment by suspending payments to Plaintiffs (Id.).

In an apparent attempt to resolve the contractual dispute between the parties, without submitting appeals and exhausting administrative remedies, Plaintiffs sued in this Court, attaching the Contract, and alleging jurisdiction under ERISA (Mendes Aff. II, ¶ 5). In addition to admitting that they have a Contract with the Fund, Plaintiffs also allege that they are assignees of Fund participants (Id.).

In an effort to correct the record, contrary to the Fund's assertion in Mendes Aff., ¶ 8, Fund participants who receive treatment from Plaintiffs do sign forms assigning their benefits to Plaintiffs; however, the Fund does not require an executed assignment form prior to paying Plaintiffs (Mendes Aff. II, ¶ 6).

Furthermore, in the Contract with Defendant, Plaintiffs agreed to "hold harmless" any participants of the Fund (Mendes Aff. II, ¶ 7). The purpose of the "hold harmless" paragraph is to avoid a situation wherein a provider, dissatisfied with the amount of the Fund's schedule of allowances, would seek the balance of the bill from the treated Fund participant (Id.). For this

reason, the Fund treats claims for payment submitted by participating providers entirely different from claims for reimbursement for services rendered by non-participating providers (Id.). The SPD, at page 91, Section VII.A "Getting Your Health Care Benefits," attached as an exhibit to Plaintiffs' opposition papers, states clearly that:

> **PAYMENT INFORMATION FOR PARTICIPATING PROVIDERS**
>
> If you are a Participating Provider, any disputes regarding payment for services from the Fund are not "claims" subject to the Department of Labor Claims Regulations (codified at 29 C.F.R. 2560.503-l) and shall be handled under the terms set forth in your Participation agreement and provider manual.

SPD, page 91 (Mendes Aff. II, ¶ 8). The "Payment Information for Participating Providers" portion of page 91 is directed at participating providers (Mendes Aff. II, ¶ 9). The "Post-Service Claims" portion of page 91 is directed to participants who are treated by non-participating providers (Id.).

Plaintiffs are either participating providers with the Fund or they are not – they may not be both, which is what Plaintiffs suggest they can be (Mendes Aff. II, ¶ 10). Here, they have agreed to be participating providers providing them with direct contract rights with the Fund (Id.). If any dispute or disagreement should arise concerning the Contract that requires court intervention, Plaintiffs and the Fund would properly have it adjudicated in New York State court, since New York State contract law would control (Id.).

Moreover, if Plaintiffs possessed rights that vested pursuant to assignment from Fund beneficiaries, Plaintiffs were required to obtain authorization from the Fund beneficiaries in order to appeal the alleged denial of benefits, and also exhaust administrative appeals prior to filing the instant lawsuit (see SPD, at pages 95-97, attached as Exhibit A to Mendes Aff. II)

4

(Mendes Aff. II, ¶ 11).  Plaintiffs did not obtain authorization to appeal on behalf of the Fund participants and did not appeal the denial of payment for benefits  (Mendes Aff. II, ¶ 11).

Plaintiffs' claim is a contract dispute and not an ERISA claim, therefore, this Court lacks jurisdiction to hear this case and Plaintiffs' Complaint must be dismissed.

## ARGUMENT

### POINT I

**PLAINTIFFS' BREACH OF CONTRACT CLAIMS ARE NOT CLAIMS FOR BENEFITS UNDER ERISA**

Plaintiffs do not have standing to sue in federal court as assignees of plan beneficiaries under 29 U.S.C. § 1132(a)(1)(B), because upon execution of the Contract between Plaintiffs and Defendant, Plaintiffs agreed to look solely to the Fund for payment of all claims for covered services (Contract, ¶ 6, attached as Exhibit A to the Complaint).  Plaintiffs are not assignees within the meaning of ERISA because they do not stand in the shoes of the Fund beneficiary-assignors.  If Plaintiffs were assignees to the Fund participants, under ERISA, Plaintiffs would have only those ERISA rights of the assignors.  Here, Plaintiffs have independent rights to payment from the Fund based on the Contract.  The Department of Labor Regulations, 29 C.F.R.2560.503-1, specifically state that a claim submitted by a provider pursuant to a contract with a plan is not a claim for benefits under ERISA.

Plaintiffs' obtaining assignments of benefits from Fund beneficiaries does not convert Plaintiffs' claims into claims for benefits under an ERISA-covered health care plan.  See Blue Cross of Cal. v. Anesthesia Care Assocs. Medical Group, Inc., 187 F.3d 1045, 1047 (9th Cir. 1999) (participating provider hospital's claims, which arose from the terms of their provider agreements and could not be asserted by their patient-assignors, were not claims for benefits under the terms of ERISA plans, and thus did not fall within § 502(a)(1)(B)); Lakeland

Anesthesia, Inc. v. Louisiana Health Serv. & Indemnity Co., Civil Action 00-1151 Section "T" (5), 2000 U.S. Dist. Lexis 18286, at *3-4 (E.D. La. Dec. 6, 2000) (same).

"Irrespective of whether [Plaintiffs'] patients may have assigned their rights to [P]laintiffs, [the Fund and Plaintiffs] have a separate and distinct right to recover from [the Fund] in their independent capacity as providers." See Lakeland Anesthesia, 2000 U.S. Dist. Lexis 18286, at *4. Plaintiffs have asserted breach of the Provider Agreement which the beneficiary-assignors could not assert since they are not parties to the Provider Agreement. See Blue Cross of Cal., 187 F.3d at 1051.

Furthermore, by executing the Contract, Plaintiffs agreed to resolve any dispute with the Fund under the terms set forth in the Provider Agreement. The SPD clearly identifies the difference in remedies for participating providers compared to participants who visit non-participating providers. By their own behavior, it is clear that Plaintiffs have not sought payment pursuant to an ERISA assignment because to do so they would have had to pursue appeals to the Trustees for each assignment. Therefore, Plaintiffs may not look to ERISA to provide them a remedy for any alleged breach of the Contract between them and the Fund.

"Plaintiffs' claims are completely independent from ERISA," Lakeland Anesthesia, Inc., 2000 U.S. Dist. Lexis, at * 9, and Plaintiffs possess no ERISA standing in their own right, see Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1288 n.9 (5th Cir. 1988). Misic v. The Bldg. Serv. Employees Health and Welfare Trust, 789 F.2d 1374, 1377 (9th Cir. 1986), and the other cases cited by Plaintiffs do not address the circumstances presented in the instant case. In Misic, the provider dentist had no contractual agreement with his patient's health benefit plan, such as a provider agreement. In Misic and the other cases relied upon by Plaintiffs, the health care providers sought reimbursement as assignors under the terms of a

6

benefit plan because the assignation was the only basis for the providers' reimbursement claims. See, e.g., Hermann, 845 F.2d at 1286-87; Richstone v. Chubb Colonial Life Insur., 97 Civ. 3481 (HB) (HBP), 1999 U.S. Dist. Lexis 6776, at *3-4 (S.D.N.Y. May 7, 1999); Protocare v. Mutual Ass'n Adm'rs, Inc., 866 F. Supp. 757, 759 (S.D.N.Y. 1994).

In light of the foregoing, it is plain that Plaintiffs are not vested with standing to sue the Fund under ERISA and the Complaint must be dismissed.

### POINT II

### THIS COURT MAY NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIMS

A court may exercise supplemental jurisdiction over a plaintiff's state law claim only if the court had original jurisdiction over the primary federal claim. Doe v. Smith, 2001 U.S. Dist. Lexis 24974, at * 20-21 (E.D.N.Y. Jan. 12, 2001). In summarizing this principle, "a number of courts have stated that if a federal cause of action is dismissed on a Federal Rule of Civil Procedure 12(b)(1) motion for lack of subject matter jurisdiction, then the court may not exercise supplemental jurisdiction over the related state law claims." Id. (citing Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). Here, Plaintiffs are not plan participants, beneficiaries, or assignees and therefore do not have standing because their breach of contract claims are not valid federal claims. See Ward v. Alternative Health Delivery Systems, Inc., 261 F.3d 624, 627 (6th Cir. 2001).

### CONCLUSION

For the forgoing reasons, this Court should grant Defendant's motion to dismiss the

Complaint for lack of subject matter jurisdiction.

Dated: New York, New York
September 23, 2004

                              Respectfully Submitted,

                              1199 National Benefit Fund for Health and Human Services

                              By:     /s/
                                    Key A. Mendes (KM-1984)
                                    Associate Counsel
                                    330 West 42nd Street, 31st Floor
                                    New York, NY  10036
                                    (646) 473-6041 (phone)
                                    (646) 473-6049 (facsimile)

                              Attorney for Defendant

N:\USERS\Attorneys\Legal\Litigation\Cases\Sewell Caricare\Sewell Reply Memo of Law km.doc