UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CLINTON SEWELL, M.D. and
CARICARE MEDICAL SERVICES, P.C.,

                    Plaintiffs,

        -against-

1199 NATIONAL BENEFIT FUND FOR HEALTH
AND HUMAN SERVICES,

                    Defendant.
------------------------------------------------------------------X

Case No. 04-CV-04474
ECF Case

AFFIRMATION OF
KEY A. MENDES

       KEY A. MENDES, being duly sworn, deposes and affirms that the following statements are true, and those made upon information and belief she believes to be true, under penalties of perjury:

1. I am an attorney admitted to practice in the courts of the State of New York and represent the Defendant 1199 National Benefit Fund for Health and Human Services (the "Fund") in this matter.

2. I am fully familiar with the pleadings in this matter, and make this affidavit in support of Defendant's Reply Memorandum of Law in Support of Defendant's Motion to Dismiss in Lieu of An Answer pursuant to the Federal Rule of Civil Procedure 12(b)(1).

3. Plaintiffs submit claims for payment by indicating procedure codes set forth in the American Medical Association's Book of Current Procedural Terminology (CPT) 2004. The Fund has compensated Plaintiffs for treating Fund beneficiaries in accordance with the Fund's schedule of allowances for the procedure codes identified by Plaintiffs.

4. On or about November 2003, the Fund performed an analysis of treatment codes used in Plaintiffs' claims submitted to the Fund for payment. The Fund detected a marked over-utilization of the codes that generated the highest payment rates ("Upcoding"). On November 19, 2003, the Fund alerted Plaintiffs that their pattern of Upcoding resulted in Plaintiffs' overbilling the Fund and the Fund's making excess payments to Plaintiffs. During a meeting in or about January 2004, Plaintiff Sewell and his counsel met with the Fund's staff and the Fund's General Counsel in order to discuss Plaintiffs' pattern of

  Upcoding. Plaintiff Sewell did not agree with the Fund's allegation of Upcoding and refused to reimburse the Fund for its excess payments to Plaintiffs. In or about January 2004, the Fund began to recoup its overpayment by suspending payments to Plaintiffs.

5. In an apparent attempt to resolve the contractual dispute between the parties, without submitting appeals and exhausting administrative remedies, Plaintiffs sued in this Court, attaching the Contract, and alleging jurisdiction under ERISA. In addition to admitting that they have a Contract with the Fund, Plaintiffs also allege that they are assignees of Fund participants.

6. In an effort to correct the record, contrary to the Fund's assertion in the Affirmation of Key A. Mendes, sworn to July 26, 2004, ¶ 8, Fund participants who receive treatment from Plaintiffs do sign forms assigning their benefits to Plaintiffs; however, the Fund does not require an executed assignment form prior to paying Plaintiffs.

7. In the Contract with Defendant, Plaintiffs agreed to "hold harmless" any participants of the Fund. The purpose of the "hold harmless" paragraph is to avoid a situation wherein a provider, dissatisfied with the amount of the Fund's schedule of allowances, would seek the balance of the bill from the treated Fund participant. For this reason, the Fund treats claims for payment submitted by participating providers entirely different from claims for reimbursement for services rendered by non-participating providers.

8. The SPD, at page 91 (attached as an exhibit to the Affirmation of Vivia L. Joseph, sworn to September 16, 2004), Section VII.A "Getting Your Health Care Benefits," attached as an exhibit to Plaintiffs' opposition papers, states clearly that:

> **PAYMENT INFORMATION FOR PARTICIPATING PROVIDERS**
>
> If you are a Participating Provider, any disputes regarding payment for services from the Fund are not "claims" subject to the Department of Labor Claims Regulations (codified at 29 C.F.R. 2560.503-l) and shall be handled under the terms set forth in your Participation agreement and provider manual.

SPD, page 91.

9. The "Payment Information for Participating Providers" portion of page 91 is directed at participating providers. The "Post-Service Claims" portion of page 91 is directed to

participants who are treated by non-participating providers.

10. Plaintiffs are either participating providers with the Fund or they are not – they may not be both, which is what Plaintiffs suggest they can be. In the instant matter, they have agreed to be participating providers providing them with direct contract rights with the Fund. If any dispute or disagreement should arise concerning the Contract that requires court intervention, Plaintiffs and the Fund would properly have it adjudicated in New York State court, since New York State contract law would control.

11. If Plaintiffs' rights vested pursuant to assignment from Fund beneficiaries, Plaintiffs were required to obtain authorization from the Fund beneficiaries in order to appeal the alleged denial of benefits, and also exhaust administrative appeals prior to filing the instant lawsuit (see SPD, at pages 95-97, attached hereto as Exhibit A). Plaintiffs did not obtain authorization to appeal on behalf of the Fund participants and did not appeal the denial of payment for benefits.

WHEREFORE, for the reasons stated above, and more fully detailed in the accompanying reply memorandum of law, Defendant respectfully requests that this action be dismissed pursuant to Rule 12(b)(1).

Dated: New York, New York
September 23, 2004

      /s/
Key A. Mendes (KM1984)
Associate Counsel
1199 National Benefit and Pension Funds
Legal Department
330 West 42nd Street, 31st Floor
New York, NY 10036
(646) 473-6041 (phone)

Attorney for Defendant

\\Nbfacct\USERS\Attorneys\LEGAL\Litigation\Cases\Sewell Caricare\Affirmation of KAM II.doc