```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
CLINTON SEWELL, M.D. and                 :
CARICARE MEDICAL SERVICES, P.C.          :
                                         :   04 Civ. 4474 (JSR)
              Plaintiffs,                :
                                         :   MEMORANDUM ORDER
         -v-                             :
                                         :
THE 1199 NATIONAL BENEFIT FUND FOR       :
HEALTH AND HUMAN SERVICES,               :
                                         :
              Defendant.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Having prevailed at trial and on appeal, defendant The 1199 National Benefit Fund for Health and Human Services (the "Fund") now moves, pursuant to 29 U.S.C. § 1132(g)(1), for attorneys' fees and costs totaling $148,275.69. For the reasons set forth below, the motion is hereby granted.

Plaintiffs are Clinton Sewell, an individual doctor, and Caricare Medical Services P.C., Sewell's company. Defendant is an "employee benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002. Plaintiffs sued as assignees of Fund beneficiaries, claiming that the Fund had acted in an arbitrary and capricious manner in withholding payments to them for medical services provided to beneficiaries.[1] Following a seven-day bench trial, the Court ruled for defendant, determining that

---

[1] Although section 1132(a)(1) limits standing only to plan beneficiaries or participants, the Second Circuit has recognized an exception granting standing to healthcare providers to whom beneficiaries have assigned claims in exchange for healthcare services. See Simon v. GE, 263 F.3d 176, 177-78 (2d Cir. 2001)(per curium).

defendant's withholding of payments had not been arbitrary or capricious. See transcript 9/15/05 at 673. The Court upheld the Fund's determination that the plaintiffs had improperly billed the Fund for medical services, choosing billing codes based on the dollar-value to which plaintiffs considered themselves entitled, rather than the actual services performed. Id. The Second Circuit affirmed on appeal. Sewell v. 1199 Nat'l. Benefit Fund for Health and Human Servs., 187 Fed. Appx. 36 (2d Cir. 2006). Plaintiffs requested panel reconsideration and reconsideration en banc. By order dated October 31, 2006, the Second Circuit denied those requests.

The Court may, at its discretion, award reasonable attorneys' fees and costs to either party in an action under ERISA brought by a fiduciary, participant or beneficiary. 29 U.S.C. § 1132(g); see also Fase v. Seafarers Welfare and Pension Plan, 589 F.2d 112, 116 (2d Cir. 1978). "Ordinarily, the decision is based on five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).

With respect to the "intertwined" first and fourth factors, Seitzman v. Sun Life Assurance Co. of Canada, Inc., 311 F.3d 477, 483 (2d Cir. 2002), the Court has previously determined that plaintiffs knowingly and intentionally overbilled defendants.  See transcript 12/21/06 at 5.  Accordingly, the Court finds that plaintiffs were highly culpable and that their position in pursuing this case was entirely without merit.

Likewise, the third Chambless factor weighs in favor of the fee award.  Plaintiffs rely heavily on the "general rule" that attorney's fees should not be charged against ERISA plaintiffs, Celardo v. GNY Automobile Dealers Health & Welfare Trust, 318 F.3d 142, 147 (2d Cir. 2003), neglecting to recognize the distinction between themselves and the typical unsuccessful ERISA plaintiff, who fails to show defendant's culpability but is not himself a culpable party.  "[T]he favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought *in good faith*--the purpose of ERISA being to promote the interests of plan beneficiaries and allow them to enforce their statutory rights."  Salovaara v. Eckert, 222 F.3d 19, 28 (2d Cir. 2000)(emphasis added)(internal quotation marks omitted).  As clearly culpable parties operating in bad faith, plaintiffs fall outside the scope of this general rule.  The award of attorneys fees in this case will not have any chilling effect on good faith claimants but rather will simply serve to discourage bad faith claimants from filing meritless suits.  See Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d at 871.

As to the fifth factor, the mere fact that plaintiffs nominally sued on behalf of plan beneficiaries cannot convert plaintiffs into representatives of the common interest. Here, indeed, it was the defendant that protected the fund beneficiaries by blocking plaintiffs' attempt to claim excess fund resources for themselves. Thus, the Court finds that the fifth factor likewise favors the award of fees to the defendant.

Finally, on the remaining (second) factor -- plaintiffs' ability to pay -- while plaintiffs allege that they have incurred substantial debt as a result of this litigation, <u>see</u> Affidavit of Clinton Sewell dated Dec. 8, 2006, ¶¶ 7-8, they have provided no information concerning their income. Further, the four other <u>Chambless</u> factors weigh so heavily in favor of the award that they overcome any concern relating to financial hardship. <u>See</u> <u>Black v. Bresee's Oneonta Dept. Store, Inc. Sec. Plan</u>, 919 F. Supp. 597, 604 (N.D.N.Y. 1996) (a party's "extremely diminished" ability to pay did not absolve it of its fee obligations in light of the other <u>Chambless</u> factors).

Accordingly, a fee award is clearly in order, and the defendant's request is, if anything, unduly modest, since defendant limits its application to the fees of its lead counsel (Jennifer Middleton), a paralegal, and a law clerk. When this lawsuit commenced, Middleton was a senior associate at Levy Ratner, P.C. with ten years' experience, including substantial litigation experience. She became a partner in January 2006 while the appeal in this case was pending. Defendant does not request reimbursement for fees

4

charged by other outside counsel, for work performed by in-house counsel, or for any work relating to defendant's unsuccessful motion for summary judgment.  Middleton's billing rates in this case -- $270 an hour for the period when she was a senior associate and $305 an hour for the period after she had become partner -- are below market for someone with her significant experience and impressive ability and within the range of those that have been approved by other courts in this District.  See, e.g., Baird v. Boise, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000).  Likewise, the $90 an hour fee charged for paralegal and law clerk time does not exceed the prevailing market rate in this community.  See Moon v. Gab Kwon, No. 99 Civ. 11810, 2002 WL 31512816, at *2 (S.D.N.Y. November 8, 2002); see also Kimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006).

Accordingly, defendant's motion for attorneys' fees and costs in the amount of $148,275.69 is hereby granted in its entirety.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        May 7, 2007